UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:20-cr-00719 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 22] |
| v. | : | |
| | : | |
| AUBREY DEVON SHORTER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Defendant Aubrey Devon Shorter is charged with possession with intent to distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm.[1]

Officers warrantlessly entered Defendant Shorter's home to return Shorter's six-year-old son. Shorter's son had wandered out of the apartment onto nearby streets in the middle of the night. Shorter moves to suppress evidence that police seized under a search warrant they obtained following the warrantless entry.[2]

In support of his suppression motion, Defendant Shorter argues the police's warrantless entry into his home violated the Fourth Amendment. Additionally, Shorter argues the evidence police seized while executing the search warrant is "fruit of the poisonous tree," because police obtained the search warrant using information that they received during their initial entry.[3]

---

[1] Doc. 1.
[2] Doc. 22.
[3] *Id.*

Case No. 1:20-cr-00719
GWIN, J.

In response, the Government relies on the exigent circumstances-exception to the warrant requirement. The Government argues various exigent circumstances necessitated the officers' warrantless entry into Shorter's home. Moreover, the Government asserts the officers were lawfully inside Shorter's apartment when they saw drugs, drug trafficking paraphernalia, firearms, and ammunition in plain view. Finally, the Government contends the officers' plain view observations could be used to establish probable cause for a valid search warrant.[4]

I. Background

On September 24, 2020, around two-thirty in the morning, a woman called the police to report that she had found a five-year-old boy wandering alone outside an apartment complex.[5] Police arrived on the scene shortly after.[6]

Once with the officers, the child pointed out the apartment complex where the boy said he lived and an unknown occupant buzzed the officers, child, and 911 caller into the building.[7] The child led them upstairs to a third-floor unit. The door to the unit was slightly ajar.[8] As the child went to enter the apartment, an officer told him not to go inside.[9] Once the boy stepped out of the way, an officer took out his flashlight and shined it through the open door. He saw Defendant Shorter asleep on the couch and three firearms leaning against

---

[4] Doc. 26.
[5] Doc. 26-1 at 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Unedited Draft Transcript of Suppression Hearing, at 22–23, *U.S. v. Shorter*, No. 1:20-cr-00719 (N.D. Ohio filed September 25, 2020).

- 2 -

Case No. 1:20-cr-00719
GWIN, J.

the wall.[10] The officer lightly knocked on the door, but no one inside the apartment responded.[11]

After seeing the firearms, the officers escorted the child downstairs and placed him in a squad car with supervision.[12] Several minutes later, additional officers arrived at the scene.[13] In the hallway, the officers considered the safest way to discuss with the apartment resident(s) how the child ended up alone outside.[14]

Ultimately, the officers decided it was safest to the enter the unit, announce themselves, and secure the weapons.[15] The officers entered the unit with guns drawn, repeatedly announcing "Police!"[16] An officer immediately approached Defendant and handcuffed him as Shorter asked, "What's going on?"[17] After entering the apartment, officers discovered there was also a woman on the couch; police identified her as the child's mother.

After the officers secured Shorter, Shorter asked "What's wrong?" The officer replied, "do you have a little son?" and the Defendant answered "no."[18] The officers moved Shorter into the hallway. After Defendant expressed that he was having difficulty breathing and needed to use an asthma treatment machine, the officers escorted him back inside the unit.[19]

While the woman and Shorter were seated on the couch, an officer explained that a little boy was found wondering outside the apartment building.[20] The officer told the woman

---

[10] Doc. 26-1 at 4; Suppression Hearing Ex. B, at 2:00–2:10.
[11] *Id.*
[12] Suppression Hearing Ex. B, at 2:19–2:22; Unedited Draft Transcript of Suppression Hearing, at 24; see also Doc. 26-1 at 4.
[13] Doc. 26-1 at 4; Suppression Hearing Ex. B, at 8:12.
[14] Unedited Draft Transcript of Suppression Hearing, at 50–52.
[15] *Id.* at 51–52.
[16] Suppression Hearing Ex. B, 9:40–9:50.
[17] *Id.* at 9:48–9:52.
[18] *Id.* at 10:12–10:20.
[19] *Id.* at 10:18–11:45.
[20] *Id.* at 11:45–12:08.

Case No. 1:20-cr-00719
GWIN, J.

and Defendant Shorter that police entered the unit to inform them that an officer had found their son outside and to "try and figure out what happened."[21]

After the entry, officers discovered drugs, drug trafficking paraphernalia, firearms, and ammunition in plain view.[22] Further, during a protective sweep of the entire unit, officers discovered three additional children in a back bedroom.[23]

## II. Discussion

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"[24] Accordingly, "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'"[25]

Given the long recognized sanctity of the home,[26] an officer's warrantless entry into a private residence is presumptively unreasonable.[27] However, the government can overcome this presumption "if it proves that the exigencies of the situation make the needs of law enforcement so compelling that a warrantless entry is objectively reasonable under the Fourth Amendment."[28]

Situations that pose "a risk of danger to the police or others" may support an exigent-circumstances finding.[29] The risk-of-danger exigency "has been most frequently applied in

---

[21] *Id.*
[22] Unedited Draft Transcript of Suppression Hearing, at 33; Doc. 26-1 at 4–5.
[23] Unedited Draft Transcript of Suppression Hearing, at 33; Doc. 26-1 at 4.
[24] U.S. Const. Amend. IV.
[25] *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).
[26] *Payton v. New York*, 445 U.S. 573, 601 (1980).
[27] *U.S. v. Brown*, 449 F.3d 741, 744 (6th Cir. 2006) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 748–49 (1984)); *Payton*, 445 U.S. at 586.
[28] *U.S. v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (quoting *Brigham City*, 547 U.S. at 403).
[29] *Id.*

- 4 -

Case No. 1:20-cr-00719
GWIN, J.

cases where the government actors were performing 'community-caretaker' functions rather than traditional law-enforcement functions."[30]

To establish risk-of-danger exigent circumstances, the government "must show that there was a risk of serious injury posed to the officers or other that required swift action."[31] In evaluating whether the government has met its burden, the court considers "the totality of the circumstances and the inherent necessities of the situation at the time."[32]

As an initial matter, there can be no doubt that Defendant's son—a small boy, wandering the streets alone in the middle of the night—faced a risk of serious injury or harm that required swift police action. Likewise, the parties agree that it was reasonable for the officers to enter the apartment building and attempt to reunite the lost child with his parents or caretakers.[33]

The parties disagree, however, about how the police should have responded when they arrived at Shorter's apartment. Defendant argues that no exigent circumstances existed to justify the police's warrantless entry into his apartment.

While acknowledging this is a close case, the Court is ultimately persuaded, based on the totality of the unique circumstances, that exigent circumstances were present to justify the police's warrantless entry to secure Defendant's firearms and perform a protective sweep.[34]

---

[30] *Id.*
[31] *Huffman*, 461 F.3d at 783.
[32] *Id.* (quoting *U.S. v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996)).
[33] Unedited Draft Transcript of Suppression Hearing, at 93–94 ("So, Your Honor, we agree that they have every right to go up and try to inquire.").
[34] *See U.S. v. Taylor*, 624 F.3d 626, 631–32 (4th Cir. 2010) (finding exigent circumstance justifying warrantless entry when an officer entered the defendant's home looking for the parent of an unsupervised four-year-old).

Case No. 1:20-cr-00719
GWIN, J.

Upon arriving at Defendant's partially open door, the officers could see both that Defendant was heavily armed and that firearms were within Defendant's reach. At this point, the police reasonably determined that it would be safer to enter Shorter's apartment and secure the weapons than to knock loudly on his door and wait for him to answer.

Defendant argues, citing *U.S. v. Johnson*,[35] that the "mere presence of firearms" is insufficient to create exigent circumstances. This case is unlike *Johnson*. In that case, the Defendant was not present and the officers' warrantlessly searched for and seized guns though they had "ample time to secure the premises and to obtain a search warrant."[36] In this case, Defendant was home, heavily armed, and the weapons were within his reach. Based on these specific circumstances, it was reasonable for the police to enter Defendant's apartment solely to secure the firearms—and ensure the officers' safety—before speaking with Shorter about how his son ended up outside.

Alternatively, Defendant suggests that if police determined it was too unsafe to knock on his door and wait for him to answer, the police could have called child protective services and placed the child in the state's care.[37] Indeed, the officers could have taken this approach. But it seems unnecessarily traumatic, for both parent and child, to place Shorter's son in child protective services when his guardian appears unaware the child has even left the apartment and is sleeping only feet away. Under these circumstances, the Court is persuaded that it was objectively reasonable under the Fourth Amendment for the police to enter Defendant's apartment so they could safely return the child to his home.

---

[35] 22 F.3d 674 (6th Cir. 1994).
[36] *Id.* at 680.
[37] Unedited Draft Transcript of Suppression Hearing, at 84.

Case No. 1:20-cr-00719
GWIN, J.

Having determined the police were legally inside the Defendant's apartment, the officers could rely on their plain view observations of illegal drugs, drug trafficking paraphernalia, firearms, and ammunition to seek a search warrant.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Shorter's suppression motion.

IT IS SO ORDERED.

Dated:  May 19, 2021                             *s/       James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE